The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Jose Luis OLIVAS, aka Sergio Olivas,
Defendant–Appellee.

No. 93SA116.

Supreme Court of Colorado,
En Banc.

Oct. 4, 1993.

John Suthers, Dist. Atty., Fourth Judicial District, Larry E. Schwartz, Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, William Trujillo, Deputy State Public Defender, Colorado Springs, for defendant-appellee.

Justice ERICKSON delivered the Opinion of the Court.

This is an interlocutory appeal by the prosecution pursuant to C.A.R. 4.1. The defendant, Jose Luis Olivas, a/k/a Sergio Olivas Ortiz, a/k/a Sergio Olivas, was charged with possession of marijuana and possession of marijuana with intent to distribute. *See* § 18–18–106(4), 8B C.R.S. (1986), and § 18–18–106(8), 8B C.R.S. (1986). Following a preliminary hearing, the defendant was bound over for trial on both counts. The defendant filed a motion to suppress the marijuana seized as a result of the search of the 1977 Buick he was driving even though he had consented to the search at the time of his arrest. After a hearing, the trial court suppressed the marijuana seized in the search. We reverse and remand for further proceedings consistent with this opinion.

## I

■ On November 22, 1992, Trooper Miranda of the Colorado State Patrol stopped the defendant, who was driving a 1977 Buick, because the windshield was cracked. The stop occurred at approximately 8:00 p.m. on Interstate 25 near Colorado Springs. Trooper Miranda learned the automobile which the defendant was driving had New Mexico license plates which were not registered in New Mexico computer records. After the stop occurred, Trooper Miranda asked the defendant to produce his driver's license. He produced a license issued by the state of Texas and told Trooper Miranda that he was en route to Denver from El Paso, Texas. He did not have registration papers or any evidence of ownership and said that the Buick belonged to Ramon Gutierrez of Las Cruces, New Mexico. The defendant also volunteered that there were some items in the glove compartment. When the glove compartment was opened it contained no vehicle registration documents or anything to establish ownership, valid insurance coverage, or vehicle identification. Trooper Miranda issued a warning ticket to the defendant for the cracked windshield and asked whether he was carrying illegal weapons, illegal drugs, or large amounts of money.[1]

---

1. Once Trooper Miranda had lawfully stopped the defendant for a routine traffic violation, there was no level of suspicion required to request the defendant's voluntary consent to search the automobile. However, it is evident to us that the trooper, a fourteen-year veteran with the Colorado State Patrol, reasonably suspected that contraband was present in the automobile. The subsequent investigation suggested a particular "drug courier profile" which prompted Trooper Miranda to ask whether there was any contraband in the vehicle and to request the defendant's consent to search the automobile.

The defendant told Trooper Miranda that the automobile belonged to Raymond Gutierrez of Las Cruces, New Mexico, a town which is located not far from the Mexican border. The defendant, who was licensed to drive in Texas, and was driving an automobile bearing questionable New Mexico license plates, also stated that he was en route to Denver from El Paso, Texas, but he carried no luggage or other items indicative of an interstate trip, and possessed nothing oth-

The defendant said "no," and at Trooper Miranda's request, voluntarily consented to a search of the automobile.[2]

During the search, Trooper Miranda opened the trunk and saw that it contained no luggage. When Trooper Miranda inspected the automobile's spare tire compartment, the defendant commented that there weren't any drugs in there. The search of the automobile revealed no evidence of contraband until Trooper Miranda noticed that the panel on the left front door of the Buick was loose and was separated from the door by one to two inches. Trooper Miranda testified that he looked behind the loose driver's side door panel with a flashlight and without touching the panel saw plastic packages. Trooper Miranda then pulled a loose section of the panel back and observed what appeared to be plastic packages of marijuana. When the door panel was subsequently removed, small plastic packages containing forty-nine pounds of marijuana were found. The defendant initially claimed that he did not know that marijuana was hidden in the door. After he was advised of his rights and made a statement, the defendant was told that he could be prosecuted as a special offender if more than 100 pounds of marijuana were found in the automobile.[3] At that point the defendant replied that the automobile did not contain that much marijuana.

The primary question before the trial court was the scope of the consent given by the defendant to search the automobile which he was driving. The trial court considered significant the fact that the defendant was not advised he could refuse to give his consent to the search. The trial court also questioned whether Trooper Miranda could see behind the panel before it was pulled away from the door. After considering all of the factors involved, the trial court stated:

> [T]he primary issue seems to be the scope of the search. It appears to me although Mr. Olivas did consent and agreed that the car would be searched and apparently cooperated in the search of the trunk, I would not find based on the consent form I have or on any testimony that I heard that [the] consent extended to pry off the panels of the car. [The car] was basically destroyed on the inside. And I would find the officer went in fact beyond the scope of what is an admissible search and would therefore suppress the evidence that was seized after he had pried off the panels.
>
> It seems to me also that although it's not required under case law, that the forms the police department use really should have the right to refuse on those forms. It appears to me that would be a lot more—I guess a lot more indicative of their intent if they would simply state on the form, "You need not sign this form, but if you do consent, we will proceed to search at that point."
>
> So what I would find is that the scope of the search was beyond what would be acceptable, based on the kind of consent

---

er than a jacket which was in the back seat of the automobile. Moreover, when requested to do so, the defendant could produce no evidence of ownership or right to possession of the automobile and had no specific knowledge of the contents of the glove compartment.

2. The defendant gave his consent by signing a consent form. Because the defendant was unable to adequately read an English version of the consent form, he instead read and signed an equivalent form that was written in Spanish. The consent to search form provided that,

   I, Sergio L. Ortiz, authorize Michael A. Miranda and Russell Wise officers of the Colorado State Patrol, to conduct a complete search of my vehicle and contents, and/or premises; MAKE: Buick; MODEL: LeSabre; COLOR: White/Red; TYPE: 4–Door; VIN: 4P69K7X115460/727AJB (NM); Located: Colo. 25; 3 Mi. S. Monument.
      This written permission is being given by me to the above named officers voluntarily and without threats or promises of any kind. The consent form was executed on November 22, 1992, at 8:30 p.m. and was witnessed by Trooper Miranda. At the time the form was executed, the defendant gave no indication to Trooper Miranda that he did not understand the contents of the form.

3. Following his arrest, the defendant also signed a Spanish version of an advisement of rights form which contained the complete advisement as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

that was given in this case, therefore suppress the evidence that was seized.

## II

■ In the absence of a clear statement that a suppression ruling is grounded on the Colorado Constitution, as opposed to the United States Constitution, the presumption is that a trial court relied on federal constitutional law in reaching its decision. *People v. McKinstrey,* 852 P.2d 467, 469 (Colo.1993); *People v. Inman,* 765 P.2d 577, 578 (Colo.1988). Therefore, the sole issue in this interlocutory appeal is whether the Fourth Amendment requires suppression of the evidence.

The prosecution claims that the search behind the door panels of the automobile was constitutionally permissible because it would have been objectively reasonable for the defendant to understand that by consenting to a "complete" search of the automobile, he also consented to the search of those parts of the automobile that provide places where narcotics could be hidden, such as behind loose door panels, in the crevices of the trunk, or behind the spare tire. We agree, and conclude that the trial court erred in its determination that the search behind the door panels of the automobile exceeded the scope of consent given by the defendant.

## III

### A

■ The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. *Minnesota v. Dickerson,* — U.S. —, —, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993); *Florida v. Jimeno,* — U.S. —, —, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991). "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Jimeno,* at —, 111 S.Ct. at 1803 (quoting *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)). The United States Supreme Court has long approved consensual searches. *See Schneckloth v. Busta-*

*monte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). Consent to search eliminates the requirement for a search warrant so long as the search is reasonable and within the scope of the consent. *People v. Kennard,* 175 Colo. 479, 488 P.2d 563 (1971).

■ The scope of a warrantless search is generally defined by its expressed object, *United States v. Ross,* 456 U.S. 798, 824, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982), and a consensual search may not legally exceed the scope of the consent supporting it. *Walter v. United States,* 447 U.S. 649, 656–57, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno,* — U.S. at —, 111 S.Ct. at 1804. Whether a search remained within the boundaries of the consent is a factual question to be determined from the totality of the circumstances, and the trial court's factual determinations will be upheld on appeal unless they are clearly erroneous. *United States v. Espinosa,* 782 F.2d 888, 890 (10th Cir.1986); *United States v. Sierra Hernandez,* 581 F.2d 760 (9th Cir.), *cert. denied,* 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978).

### B

The question presented in this case is whether the defendant's general consent to search the automobile included consent to search areas behind loose door panels that police officers believed might contain contraband. The United States Tenth Circuit Court of Appeals has consistently upheld similar consent searches of automobiles.

In *United States v. Torres,* 663 F.2d 1019 (10th Cir.1981), the Tenth Circuit upheld a consensual search of the area behind a door panel of an automobile after a police officer was able to see suspected stolen money in the well of an ashtray he had pulled out from the door. In finding that the search had not exceeded the scope of

general consent that the defendant had given to authorities to perform a "complete" search of the automobile, the court stated:

> Unquestionably, [the defendant] gave his voluntary consent when he signed the form which was provided him. This explained that a complete search was to be made, and thus, of course, it logically follows permission to search contemplates a thorough search. If not thorough it is of little value. A complete search was authorized, and it should have been anticipated that it would be a careful one, although the defendant may have thought that the officers might overlook the money.

*Id.* at 1027 (citations omitted).

In *United States v. Espinosa,* 782 F.2d 888 (10th Cir.1986), the Tenth Circuit again upheld a consensual search of the area behind an automobile's left rear quarter panel when an officer lifted an unsecured corner of the panel and discovered cocaine. The court said:

> Defendant stood beside his car expressing no concern during this thorough and systematic search. The search lasted approximately fourteen minutes. At no time did defendant attempt to retract or narrow his consent. Failure to object to the continuation of the search under these circumstances may be considered

an indication that the search was within the scope of the consent.

*Id.* at 892.

A similar consensual search of a rear quarter panel of an automobile was upheld by the Tenth Circuit in *United States v. Pena,* 920 F.2d 1509 (10th Cir.1990), when the police investigation indicated that a solid object was being hidden in that area. In rejecting the defendant's claim that such a search exceeds the scope of consent, the court reiterated its holding in *Espinosa* that the "failure to object to the continuation of the search under these circumstances may be considered an indication that the search was within the scope of the consent." *Id.* at 1515.

We believe these cases provide appropriate guidance on the question of a police officer's ability to search an automobile when the person providing the consent initially agrees to a general and "complete search of [the] vehicle and contents." [4] It is true that the scope of a consensual automobile search is not limitless, and that the search remains bounded by concepts of reasonableness. *Jimeno,* —— U.S. at ——, 111 S.Ct. at 1803. A suspect also remains free to completely withhold his consent if he so chooses, and may place limits on the scope of the consent which he gives. [5] However, when a suspect signs a general consent form authorizing "a complete search of [the] vehicle and [its] contents," it is rea-

---

4. The consent form the defendant signed authorizes "[o]fficers of the Colorado State Patrol to conduct a complete search of my vehicle and contents." The defendant signed a form containing this provision printed in Spanish.

5. The trial court indicated that the police should be required to notify the suspect that he is free to withhold his consent to search and that failure to so notify the defendant suggests that the search went beyond the scope of consent. The trial court stated that "although it is not required under case law, the forms the police department use really should have the right to refuse on those forms. It appears to me that would be a lot more ... indicative of their intent if they would simply [tell the suspect that he need not consent to the search]."

As the trial court correctly stated, the police are not necessarily required to inform a suspect that he may withhold consent. The issue of notification is not relevant to the question of scope of consent, but instead relates to whether

the defendant's consent to search was voluntary. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973) (stating that "voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent"). The totality of the circumstances test adopted in *Schneckloth* to determine the voluntariness of consent appropriately considers whether the defendant was, or should have been, aware of his right to withhold consent. However, in this case, it is not disputed that the defendant voluntarily consented to "a complete search" of his vehicle, and we do not consider the voluntariness question on appeal. The trial court should not have interjected considerations relating to voluntariness into an analysis of the scope of consent.

sonable for a police officer to believe that he may search areas of the automobile that extend beyond the passenger compartment and trunk if the facts and circumstances surrounding the search and investigation provide the officer with a sufficient basis to believe that contraband was hidden in those areas and the suspect fails to affirmatively limit the search away from those areas. *See Jimeno,* ⸺ U.S. at ⸺, 111 S.Ct. at 1804 (stating that a suspect may delimit the scope of consent, but if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring more explicit authorization); *see also People v. Kennard,* 175 Colo. 479, 488 P.2d 563 (1971).

### C

When analyzed within the framework of an objective reasonableness test, the trial court's factual determination that the search of the defendant's automobile exceeded the scope of his consent is clearly erroneous. Trooper Miranda, after giving the defendant a warning ticket for the cracked windshield, asked the defendant whether he was carrying illegal weapons, illegal drugs, or large amounts of money. The defendant replied in the negative. Trooper Miranda then requested, and received, the defendant's consent to search the automobile for those items. At that point, "a complete search was authorized and it should have been anticipated that it would be a careful one, although the defendant may have thought that the officers might overlook the [drugs]." *Torres,* 663 F.2d at 1027.

Although the defendant was standing only a short distance away at the time Trooper Miranda looked behind the door panel, there is no indication that the defendant ever expressly or impliedly made any attempt to limit the scope of the search so as not to include the area behind the loose door panels. The defendant knew that the object of the search was illegal weapons or drugs. Smugglers of these types of items generally do not leave them scattered loosely throughout the vehicle, but instead hide the illegal products out of sight or in containers. *Jimeno,* ⸺ U.S. ⸺, 111 S.Ct. at 1804. An experienced law enforcement officer might reasonably believe that the area behind a loose door panel is a likely place to hide contraband while it is being transported on interstate highways. It is therefore objectively reasonable, both from the defendant's and the trooper's perspective, that a complete search of the defendant's automobile for the express purpose of searching for illegal drugs would include looking behind a suspiciously loose door panel.[6] Under these circumstances, Trooper Miranda's search behind the loose driver's side door panels of the automobile which the defendant was driving was reasonable and the trial court's finding to the contrary is clearly erroneous.

### IV

Under the facts of this case, the suppression order was clearly erroneous. The order is reversed and the case remanded for further proceedings consistent with this opinion.

---

6. Contrary to the trial court's finding, the record indicates that Trooper Miranda made no effort to "pry off" the door panel or door to search for drugs. Rather, when confronted with a loose door panel, coupled with his training and experience in the investigation of drug smuggling, Trooper Miranda pulled an already loose panel away from the door a couple of inches to look behind it. It is not unreasonable to conduct such a search in this case. We believe it is also significant that no destruction of the defendant's property occurred as a result of the challenged search. *See United States v. Strickland,* 902 F.2d 937 (11th Cir.1990) (stating that "although an individual consenting to a vehicle search should expect that search to be thorough, he need not anticipate that the search will involve the destruction of his vehicle, its parts, or its contents"). The destruction to the door of the automobile which concerned the trial court occurred only after the officers had discovered that forty-nine pounds of marijuana were secreted behind the door panels.