**The PEOPLE of the State of Colorado,
Plaintiff–Appellant,**

v.

**Sylvia Joy DUMAS, Defendant–Appellee.**

No. 97SA400.

Supreme Court of Colorado,
En Banc.

March 2, 1998.

James J. Peters, District Attorney, Eighteenth Judicial District, John Topolnicki, Chief Deputy District Attorney, Englewood, for Plaintiff–Appellant.

David F. Vela, State Public Defender, Elizabeth Texel Turner, Deputy State Public Defender, Englewood, for Defendant–Appellee.

Chief Justice VOLLACK delivered the Opinion of the Court.

In this interlocutory appeal, the People challenge a suppression order of the Arapahoe County District Court (trial court). The

trial court found that Sylvia Joy Dumas (defendant) consented to a search of her motel room for drugs, contraband, and weapons. However, the trial court concluded that the search of a checkbook, which produced other incriminating evidence, was unconstitutional. As a result, the trial court suppressed the evidence and statements made by defendant regarding the evidence. We reverse and remand.

## I.

On July 18, 1996, Officer William Revelle and Officer Brian Saupe of the Aurora Police Department received an anonymous tip that drug activity was taking place in defendant's room at the Heaven on Earth Motel. They knocked on defendant's door and asked if they could search her room for drugs, contraband, and weapons. Defendant consented and allowed the officers to search her room. During the search, Officer Saupe discovered a shoe box containing over $1,000 in United States postage stamps. When asked about the stamps, defendant said that they had been given to her by a friend named Kid, who no longer needed the stamps because he had gone out of business. Continuing the search, Officer Saupe found a checkbook between the mattresses of defendant's bed. He opened the checkbook and noticed that the checks were inscribed with the name Anita Foxworth.[1] He also found two sales receipts from the United States Post Office inside the checkbook, indicating the purchase of over $1,000 in stamps.[2]

After seizing the checkbook and the receipts, the officers placed defendant under arrest on two outstanding warrants unrelated to this case. Although defendant was released shortly thereafter, she later turned herself in on a probation violation. While in custody on August 16, 1996 defendant spoke to Officer Jim March regarding the postage stamps. After Officer March gave the required *Miranda* warnings, defendant admit-

ted to purchasing the stamps with the invalid checks.[3] She also admitted that she later went to another post office branch and exchanged $320 worth of the stamps for cash. As a result, defendant was charged with theft and forgery.

Defendant filed a motion to suppress the evidence discovered in the checkbook and her statements to Officer March. The trial court found the checkbook search unconstitutional and granted defendant's motion. Although the court noted that there were several valid reasons for searching the checkbook, it concluded that Officer Saupe "was not looking for contraband, weapons, or drugs when he opened up the checkbook." As a result, the trial court suppressed the evidence in the checkbook and the statements made by defendant as products of an illegal search.

## II.

▪ The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. *See People v. Olivas*, 859 P.2d 211, 214 (Colo.1993). A search without a warrant is presumptively unreasonable unless the search fits into one of the time-honored exceptions to the warrant requirement. *See People v. Cascio*, 932 P.2d 1381, 1389 (Colo.1997). One of these exceptions is a search conducted pursuant to consent. *See id.*

▪ A warrantless search conducted on the basis of consent is limited by the terms given by the consenting party. *See People v. Herrera*, 935 P.2d 956, 958 (Colo.1997). Where consent is confined to certain items, the search must be restricted to those areas likely to contain the items sought. *See People v. Torand*, 622 P.2d 562, 565 (Colo.1981). Whether a search remained within the boundaries of the consent is a factual question to be determined from the totality of the circumstances, and the trial court's factual

1. Anita Foxworth was never identified. The Seattle, Washington address on the checks was not legitimate, and the Seattle bank that had issued the checks no longer existed.

2. Defendant claimed that she had never seen the checkbook before. However, after Officer Saupe discovered a credit card in the name of Anita

Foxworth, defendant stated that she found the credit card inside the checkbook.

3. Check No. 3702 from the checkbook was used to purchase $640 in stamps, and check No. 3703 was used to purchase another $640 in stamps.

determinations will be upheld on appeal unless they are clearly erroneous. *See Olivas*, 859 P.2d at 214. The determinative test regarding the scope of consent is one of "'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* (quoting *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297 (1991)).

■ Besides consent, another well-established exception to the warrant requirement is the "plain view" doctrine. *See Coolidge v. New Hampshire*, 403 U.S. 443, 465–67, 91 S.Ct. 2022, 2037–39, 29 L.Ed.2d 564 (1971). Under this doctrine, when police officers are conducting a legitimate search, they are not required to close their eyes to other incriminating evidence plainly visible to them. *See People v. Billington*, 191 Colo. 323, 326, 552 P.2d 500, 502 (1976). For example, when police have consent to search for particular items, they may seize the items sought as well as other incriminating evidence in plain view. *See Torand*, 622 P.2d at 565–66. A plain view seizure must satisfy the following requirements: (1) there must be an initial valid intrusion, (2) the discovery of the evidence must be inadvertent, and (3) there must be a reasonable belief that the evidence seized was incriminating. *See People in Interest of R.A.*, 937 P.2d 731, 738–39 (Colo.1997). Such a belief exists when the incriminating nature of the evidence is immediately apparent to the searching officer. *See People v. Staton*, 924 P.2d 127, 135 (Colo. 1996).

## A.

The validity of the officers' entry into defendant's motel room is not in dispute. The trial court found that Officers Revelle and Saupe properly approached defendant's room and that defendant voluntarily allowed the officers to enter. Once inside, Officer Revelle asked defendant if they could search the room for drugs, contraband, or weapons. The trial court found that defendant voluntarily consented to the search and that the scope of her consent was limited to drugs, contraband, and weapons.

## B.

■ The key question in this case is whether the officers unconstitutionally exceeded the scope of defendant's consent by searching the checkbook. The trial court concluded that the search was unconstitutional. In our view, the search was properly within the scope of consent.[4]

■ The scope of consent is determined by "objective reasonableness"—what a reasonable person would have understood by the exchange between the officer and the suspect. *See Olivas*, 859 P.2d at 214.[5] In this case, Officers Revelle and Saupe asked defendant if they could search her motel room for drugs, contraband, and weapons. She agreed. Given this simple exchange, it is objectively reasonable to conclude that the scope of consent included all items likely to contain drugs, weapons, or contraband.[6]

4. The People claim that defendant does not have standing to raise a constitutional challenge to the search because she is not the rightful owner of the checkbook. However, a defendant can challenge the constitutional legitimacy of a governmental search, if the defendant has a legitimate expectation of privacy in the area searched. *See People v. Naranjo*, 686 P.2d 1343, 1345 (Colo. 1984). The renter of a motel room has a legitimate expectation of privacy during the period of the rental in both the room and its contents. *See People v. Montoya*, 914 P.2d 491, 492 (Colo.App. 1995) (citing *Stoner v. California*, 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856 (1964)). Defendant invited the police officers into the motel room, stated that the room was hers, and remained present in the room during the search. It is undisputed that defendant was the renter and occupant of the motel room at the time of

the search. Therefore, defendant has standing to challenge the constitutionality of the search.

5. In some situations, a police officer's subjective intent may be relevant. *See People v. Rodriguez*, 945 P.2d 1351, 1360 (Colo.1997). However, a trial court should not rely on subjective intent to determine whether a search properly conformed to the scope of consent.

6. This was the scope of consent assumed by the trial court in upholding the shoebox search and the mattress search. The trial court found that the search of the shoebox was within the scope of consent because "certainly a shoe box could contain any one of those three things being searched, drugs, contraband, or weapons." Similarly, the court determined that the search of the mattresses was within the scope of consent

Clearly, the checkbook was such an item. As the trial court observed, many drugs are small enough to be hidden in a checkbook. Moreover, we have previously noted that "drug evidence can readily be concealed in small containers." *People v. Moore*, 900 P.2d 66, 71 (Colo.1995) (drug evidence concealed in a wallet); *accord People v. Chaves*, 855 P.2d 852, 853 (Colo.1993) (drug evidence concealed in a folded dollar bill); *People v. Casias*, 193 Colo. 66, 70, 563 P.2d 926, 929 (1977) (drug evidence concealed in a "small tin-foil package").[7] Because it was objectively reasonable to believe that the checkbook could contain drugs, we hold that the search of the checkbook was within the scope of defendant's consent.

### C.

■ While defendant did not expressly consent to a search for postal receipts and other evidence in the checkbook, the trial court found, and we agree, that once the checkbook was opened, the seizure of this evidence was justified by the plain view doctrine. *See Torand*, 622 P.2d at 565–66; *Billington*, 191 Colo. at 325–26, 552 P.2d at 502–03.[8] The plain view doctrine applies in this case because (1) the initial intrusion was valid, (2) the discovery of the evidence was inadvertent, and (3) the incriminating nature of the evidence was immediately apparent to Officer Saupe.[9] As Officer Saupe testified, finding the receipts "heightened my suspicion about the stamps either being stolen property or the checks being forged for the stamps." Defendant initially told Officer Saupe that she received the unusually large number of stamps from a friend as a gift. She also told Officer Saupe that she had never before seen the checkbook. However, contrary to defendant's claims, the receipts indicated that she had purchased over $1000 in postage stamps with checks that did not belong to her. Under these circumstances, Officer Saupe was not required to ignore the evidence of theft and forgery that was immediately apparent to him. He was entitled to seize such evidence as part of the lawful consensual search.

### III.

■ We hold that the search of the checkbook conformed to the scope of consent and that the evidence discovered in the checkbook was legitimately seized. Therefore, we also hold that defendant's state-

---

because "that is probably a common hiding place that police officers know to look for contraband, drugs and weapons." In upholding these searches, the court made no attempt to determine whether the officers were actually looking for these specific items. Rather, it found that the searches were proper because drugs, weapons, and contraband could be concealed in the items searched. This reasoning applies with equal force to the checkbook.

**7.** Officer Saupe explained that he had previously encountered drug evidence in small containers:

> ATTORNEY: Can you explain to the court whether it's true or not that you on occasion find … narcotics in small places?
> SAUPE: Yes, sometimes in small places.
> ATTORNEY: Can you explain that to us a little bit?
> SAUPE: Narcotics such as rock cocaine. I mean, a small rock could weigh, you know, less than a gram and can fit into the, you know, end of a ball point pen or, you know, anything that small. So narcotics can be hidden anywhere, basically.

**8.** In *Billington*, police obtained defendant's written consent to search his hotel room for a specific bundle of documents. Inside the bundle, police discovered several check stubs corresponding to checks allegedly forged by defendant. We held that the check stubs were properly seized under the plain view doctrine, noting that "the officer was not required to close his eyes to the incriminating evidence plainly visible to him." *Billington*, 191 Colo. at 326, 552 P.2d at 502.

Similarly, the defendant in *Torand* consented to a search of his apartment for a shotgun and a camera. During the search, one of the investigating officers opened a shaving kit and discovered a high school class ring. After determining that the ring had been stolen, police obtained a warrant and seized the ring. We held that even though the defendant did not consent to a search for the ring, the seizure of the ring was justified, provided that it was reasonable for the officer to search for the camera inside the shaving kit.

**9.** The "immediately apparent" requirement means that the officer has probable cause to believe the evidence is incriminating. *See Horton v. California*, 496 U.S. 128, 136, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990). Probable cause must exist without further search by the officer. *See Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993).

ments were not the product of an illegal search. Accordingly, we reverse the trial court's suppression order and remand for further proceedings consistent with this opinion.