The **PEOPLE** of the State of Colorado, Plaintiff/Appellant,

v.

Terry Karim **NAJJAR**, Defendant/Appellee.

No. 99SA119.

Supreme Court of Colorado, En Banc.

June 28, 1999.

Frank J. Daniels, District Attorney, Twenty-first Judicial District, Vincent J. Felletter, Jr., Deputy District Attorney, Grand Junction, Colorado, Attorneys for Plaintiff/Appellant.

Griff, Larson, Laiche & Volkmann, Stephen L. Laiche, Grand Junction, Colorado, Attorneys for Defendant/Appellee.

Justice MARTINEZ delivered the Opinion of the Court.

In this interlocutory appeal, the People challenge the trial court's suppression of evidence obtained by police during a drug interdiction operation. The trial court found that while defendant Terry Karim Najjar consented to a search of his "hip bag" for weapons or illegal substances, officers exceeded the scope of this consent by seizing an incriminating luggage claim ticket.

We conclude that officers lawfully examined the contents of the hip bag because the defendant expressly consented to a search of this container and it was reasonable to believe that weapons or illegal substances could have been located therein. The discovery and seizure of the luggage claim ticket during the course of this consensual intrusion was justified under the plain view doctrine. Accordingly, we vacate the order of suppression and remand the case to the trial court for further proceedings.

## I.

This case involves a narcotics and weapons sweep operation performed by the Grand Valley Joint Drug Task Force at the Greyhound Bus station in Grand Junction.[1] Buses routinely stop at the station to be cleaned and refueled. Continuing passengers disem-

---

**1.** For our statement of the facts, we draw extensively from the excellent written findings issued by the trial court.

bark and wait in the terminal during this process.

On May 8, 1998, officers were present with "Roy," a police canine trained to detect the scent of narcotics. When Roy was introduced to the open luggage compartment of a bus that had just arrived, he "indicated" to a black hard-sided suitcase. A uniquely numbered Greyhound luggage claim tag on the bag denoted a Las Vegas, Nevada origin, and a final destination of Detroit, Michigan. No name or other identifying marks were listed. Officers were familiar with the fact that the second half of the luggage tag (with an identical number) would be used by the owner to claim the suitcase on arrival in the destination city.

Based on the dog's initial indication, an officer smelled the seams of the bag. He detected the presence of a "masking agent" frequently used by drug couriers to hide the odor of contraband. Officers then spoke with the bus driver, who provided the passengers' tickets for inspection. This review indicated that a single individual traveling under the name of "Smitts" was heading to Detroit from Las Vegas. No other passenger shared this travel plan.

Once passengers were again seated on the bus, three plainclothes officers boarded. The officers identified themselves as police detectives and explained that, although they wished to speak with those on the bus, the passengers were free to go about their business as normal. Officers also told the travelers that their departure would not be delayed. Following these announcements, officers positioned themselves so as to allow free ingress and egress, and began speaking with passengers.

The defendant was seated at the rear and was the first person contacted. He confirmed that he was en route from Las Vegas to Detroit, but initially claimed he did not have any luggage on the bus. Faced with a follow up question, however, the defendant admitted to having a carry-on garment bag in the overhead storage area. The defendant

repeatedly denied having any other luggage on board.

During this encounter, the defendant was extremely nervous. At one point, an officer observed the defendant's bus ticket stub and asked if he could see it. As the defendant produced the ticket, his hand was trembling to such an extent that he was forced to steady it with his other hand – which was also shaking. The ticket indicated a one way trip from Las Vegas to Detroit, and had been paid for with cash. After stating that his name was "Smitts" (the same as that listed on the ticket) the defendant consented to a search of his garment bag. This search revealed no evidence of criminality.

Officers spoke with the other passengers and confirmed that the defendant was the only person going to Detroit. An officer then retrieved the suitcase that had drawn the attention of the narcotics dog, and asked the passengers (including the defendant) whether any of them owned this item. No passenger asserted ownership of the bag. When an officer specifically asked the defendant whether he had ever seen the bag before, the defendant responded in the negative.

Officers opened the suitcase and determined that it contained a large quantity of marijuana.[2] They then returned to the bus and asked the defendant if he would voluntarily step off with them. The defendant agreed to do so. He was not handcuffed or coerced, and instead walked alongside officers into the garage area of the bus station. At or about this time, the defendant identified himself as Terry Najjar. When queried regarding the "Smitts" name he provided to officers earlier (and had apparently used to purchase the bus ticket), the defendant simply hung his head.

Once in the garage, an officer asked the defendant if he would consent to a search of his person and zip-up hip bag for weapons or illegal substances. The defendant indicated his consent. The officer who performed the

---

2. Officers opened the suitcase based on their view that this item could be considered abandoned property once all of those on the bus had denied owning it. We do not consider the merits of this claim here, as it does not affect our analysis of the only issues before us – those raised by the People in their appeal.

search observed a Greyhound luggage claim tag in the bag, and removed it. The number on the claim ticket matched the number on the tag affixed to the suitcase containing the marijuana. The defendant was then arrested and taken into custody. He was subsequently charged with possession of marijuana with intent to distribute,[3] and possession of eight ounces or more of marijuana.[4]

Prior to trial, the defense filed a motion seeking suppression of (1) the contents of the suitcase; (2) all statements made by the defendant; and (3) the luggage claim tag found on the defendant's person. The trial court found that the defendant was without standing to challenge the search of the suitcase because he had never asserted ownership of the parcel and had specifically disavowed any ownership interest in this property during the suppression hearing. The court also refused to suppress the statements, finding that the defendant's interaction with officers was in the nature of a consensual encounter and did not rise to the level of a seizure under the Fourth Amendment.

However, the trial court observed that the defendant had consented to a search of his hip bag only for weapons or illegal substances. Finding that seizure of the luggage claim tag exceeded this consent, the court ordered that this item be suppressed. We now reverse.

## II.

■ The Fourth Amendment to the United States Constitution and Article II, Section 7 of the Colorado Constitution protect against unreasonable search and seizures. *See Minnesota v. Dickerson,* 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *People v. Taube,* 864 P.2d 123, 129 (Colo.1993). A search or seizure conducted without a warrant is presumed unreasonable unless justified by one of the well established and carefully defined exceptions to the warrant requirement. *See Texas v. Brown,* 460

U.S. 730, 735, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *People v. Wright,* 804 P.2d 866, 869 (Colo.1991); *People v. Thiret,* 685 P.2d 193, 200–01 (Colo.1984).

### A.

■ Consent to a search, when freely and voluntarily given, is one exception to the warrant requirement. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *People v. Olivas,* 859 P.2d 211, 214 (Colo.1993); *Thiret,* 685 P.2d at 201. The touchstone of the Fourth Amendment is reasonableness. *See generally Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). As such, consensual searches have long been approved because "it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Florida v. Jimeno,* 500 U.S. 248, 250–51, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). However, a search made pursuant to consent must be limited to the scope of the consent actually given. *See id.* at 251; *Olivas,* 859 P.2d at 214; *Thiret,* 685 P.2d at 201. Accordingly, the trial court appropriately considered whether officers exceeded the scope of consent in this case.[5]

The trial court found that the defendant consented to a search of his hip bag for weapons or contraband. However, the court concluded the seizure of the luggage claim tag exceeded the scope of this consent because "[t]here was no testimony that the claim ticket initially appeared to be drugs or weapons." Thus, the trial court found that the scope of consent precluded seizure of any items that did not either (1) directly match those designated by officers when they requested consent; or (2) closely resemble such items.

■ In our view, the trial court misapprehended the law pertaining to the scope of consent. A request by officers to search for certain items does not mean that they must

3. *See* § 18–18–409, 6 C.R.S. (1998).

4. *See* § 18–6–608, 6 C.R.S. (1998).motion

5. The People argue that the trial court should not have reached the scope of consent question because the issue was not adequately raised in the

motion to suppress. We reject this view. Because the People asserted that the defendant's consent justified the police conduct, the trial court properly considered the scope of that consent.

ignore everything else encountered during the resulting permissive intrusion. Instead, the designation of the items being sought serves only to limit the *areas* where officers may reasonably look without offending the Fourth Amendment.

▮▮▮ The scope of consent is measured by "objective reasonableness." *People v. Dumas*, 955 P.2d 60, 63 (Colo.1998); *Olivas*, 859 P.2d at 214. In other words, "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno*, 500 U.S. at 251, 111 S.Ct. 1801. When officers ask permission to search for certain specific items, objective reasonableness demands that the consensual search be restricted to those areas that could contain the items being sought. *See People v. Torand*, 622 P.2d 562, 565 (Colo.1981). Officers who receive consent to search for a stolen wide-screen television set, for example, would act unreasonably by expanding their search to include small containers or drawers where such an item could not possibly be located.

A suspect who consents only to a limited search for certain materials does not automatically insulate him or herself from the lawful seizure of other objects not delineated in the officers' request. Within those areas likely to contain the items that were specified, officers may observe other incriminating objects. Officers may seize such objects if doing so is justified by another exception to the warrant requirement (or by an actual warrant issued for the purpose of effectuating the seizure).

Our recent decision in *Dumas* is illustrative. Acting on a tip that drug activity was taking place in a hotel room, officers presented themselves and asked the defendant if she would consent to a search of the room for drugs, contraband, or weapons. *See Dumas*, 955 P.2d at 62. Consent was given on these terms. During the search, an officer came across a checkbook and, upon opening it, discovered receipts linking the defendant to a forgery scheme involving U.S. postage stamps. *See id.* The trial court suppressed the evidence as beyond the scope of consent, finding that the officer "was not looking for

contraband, weapons, or drugs when he opened up the checkbook." *Id.*

We vacated the suppression order. We noted that the exchange between officers and the defendant made it "objectively reasonable to conclude that the scope of consent included all items likely to contain drugs, weapons, or contraband." *Id.* at 63. The checkbook, we observed, was clearly such an item because " 'drug evidence can readily be concealed in small containers.' " *Id.* at 64 (quoting *People v. Moore*, 900 P.2d 66, 71 (Colo.1995)). Thus, we held that the opening of the checkbook did not exceed the defendant's consent. Because this intrusion was reasonable, we further concluded that the seizure of the incriminating postal receipts noticed by the officer when he opened the checkbook was justified under the "plain view" doctrine – another exception to the warrant requirement. *Dumas*, 955 P.2d at 64.

In the instant case, the police behavior was objectively reasonable for two reasons. First, the trial court found that the defendant had given officers explicit permission to search the hip bag for weapons or narcotics. Second, the bag could have contained the type of items being sought by the officers. Thus, the opening of this container and observation of its contents did not exceed the scope of the defendant's consent. Pursuant to *Dumas*, the subsequent removal of the luggage claim tag should be viewed as proper if another exception to the warrant requirement justified such action.

### B.

▮▮▮ The People argue that, as in *Dumas*, the plain view doctrine applies. Because we find that this well established exception to the warrant requirement provided a sufficient basis for officers to seize the luggage claim tag, we agree.

▮▮▮ The plain view doctrine "provides grounds for seizure of an item when an officer's access to [the] object has some prior justification under the Fourth Amendment." *Brown*, 460 U.S. at 738, 103 S.Ct. 1535. The exception is based on the proposition that officers conducting a legitimate search are

not required to "close their eyes to other incriminating evidence plainly visible to them." *Dumas*, 955 P.2d at 63. Aside from the requirement that officers observe an item as a result of a prior lawful intrusion and legal right of access, the incriminating character of an item must be "immediately apparent" to the officer who observes it. *People v. Staton*, 924 P.2d 127, 135 (Colo.1996); *see also Arizona v. Hicks*, 480 U.S. 321, 326–28, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987)(seizure in plain view appropriate where police have probable cause to believe object is incriminating).

■ The defendant argues that the incriminating nature of the ticket was not immediately apparent because officers did not compare the number on this tag with that affixed to the drug-filled suitcase until after the seizure. However, the officer who found the claim tag described this discovery as follows:

> I continued with the search, feeling around [the defendant's] waist and then opened a bag which [was] located around his waist, and as I opened the bag, *I observed a Greyhound baggage claim check* located inside that bag, which I removed and handed to [another detective] (emphasis added).

Before peering into the bag, the officer was aware of the following facts: (1) the defendant was the only passenger whose origin and destination matched that of the illicit suitcase; (2) the defendant had purchased his bus ticket in cash using an assumed name, and had provided this same false name to officers; (3) the defendant was extremely nervous; (4) the suitcase containing the marijuana had a uniquely numbered tag, the other half of which would be used by the owner to claim it; and (5) the defendant had repeatedly denied having additional checked luggage on the bus – and would therefore have no reason to possess a luggage claim ticket. Given this backdrop, we conclude that once the officer observed the ticket and visually identified it as "a Greyhound baggage claim check," the incriminating nature of the item was immediately apparent. Accordingly, its seizure was proper even prior to any inspection with regard to the number imprinted thereupon.

■ The defendant further argues that the seizure of the luggage claim tag does not pass muster under the plain view doctrine because the discovery was not sufficiently "inadvertent." However, inquiry into the question of inadvertence is no longer required in the plain view context. *See People v. Kluhsman*, 980 P.2d 529, 534 n. 6 (Colo.1999)(concluding, pursuant to *Horton v. California*, 496 U.S. 128, 130, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), that although inadvertence is frequently a characteristic of plain view seizures, it is not required by the Fourth Amendment). Thus, our analysis above is dispositive and the seizure here was appropriate under the plain view doctrine.

### III.

In sum, we hold that the trial court improperly suppressed the luggage claim ticket. The search of the hip bag was authorized by consent; the seizure was justified under the plain view doctrine. We vacate the order of suppression and remand the case to the trial court for further proceedings.

Justice SCOTT does not participate.