**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellant**

v.

**Stephen Lamarr MINOR,**
**Defendant–Appellee.**

**No. 09SA156.**

Supreme Court of Colorado,
En Banc.

Feb. 1, 2010.

Mitchell R. Morrissey, District Attorney, Robert J. Whitley, Chief Deputy District Attorney, Denver, Colorado, Attorneys for Plaintiff–Appellant.

Doug Wilson, Colorado State Public Defender, Hans Meyer, Deputy State Public Defender, Denver, Colorado, Attorneys for Defendant–Appellee.

Justice RICE delivered the Opinion of the Court.

In this interlocutory appeal under C.A.R. 4.1, we review a Denver District Court order suppressing evidence obtained from a police search of the defendant's belongings and statements the defendant made following discovery of that evidence. We find that the trial court erred in suppressing the evidence and subsequent statements because the defendant, who had the authority to do so, consented to the search and the search was properly conducted. We therefore reverse the trial court's order.

## I. Facts and Procedural History

On the night of January 17, 2009, two officers from the Denver Police Department stopped a vehicle after observing two turns without signals and no visible license plate. The defendant, Stephen Minor, drove the vehicle in question, while its owner sat in the front passenger seat and a third passenger occupied the rear. Officer James Waidler began conducting a routine traffic stop with the driver, while his partner and brother, Sergeant Robert Waidler, approached the vehicle from the opposite side to speak with the two passengers. After obtaining Minor's information, the two returned to their patrol car, where Sergeant Waidler informed his brother that he had observed a clear baggie containing what appeared to be marihuana in plain view on the floorboards next to the rear passenger.

Acting upon a suspicion that there were illegal drugs in the vehicle, the officers ordered all occupants out of the car, asking them to sit on the curb between the patrol car and sedan but not handcuffing them. Officer Waidler then recovered the marihuana from the backseat floorboard, explained what he had found, and asked the defendant if there was anything else illegal in the vehicle. Minor denied any knowledge of contraband, and the backseat passenger claimed ownership of the bag of marihuana.

Officer Waidler then asked the defendant for "consent to search the vehicle," which he claims the defendant provided without placing any limitations on the search. Officer Waidler initiated the search of the car believing he had the consent of Minor, the driver in control of the vehicle. After searching the interior and finding nothing, Officer Waidler opened the trunk of the vehicle, finding a closed backpack. He removed the backpack without complaint from any party, opened it by the zipper, and removed a sweater. Wrapped within the sweater were thirty-five individual bags of marihuana. Officer Waidler also found Minor's work identification card inside the backpack. The defendant was arrested and read his *Miranda* warnings. Following his arrest, the defendant made statements to the officers relating to the marihuana in the backpack.

Minor was charged in Denver District Court with possession with intent to distribute marihuana, § 18–18–406(8)(b), C.R.S. (2009), and possession of marihuana 1–8 ounces, § 18–18–406(4)(a)(I), C.R.S. (2009). The defense filed a motion to suppress the evidence and statements as the result of a warrantless search and seizure of the defendant, and the court held a hearing on the motion. Because of the failure to signal and lack of a visible license plate, the court ruled that there was no constitutional issue with the traffic stop or detainment.

However, the court ruled the marihuana evidence in the backpack inadmissible due to an illegal search and the subsequent state-

ments fruit of that poisonous tree. Specifically, the court found that Minor did consent to a search of a vehicle over which he had control, but the court also found that "opening that backpack without any effort to gain consent or a warrant is unconstitutional."[1] In turn, the court suppressed all the defendant's statements following the discovery of the marihuana as the fruit of the illegal search. The People brought this interlocutory appeal of the Denver District Court ruling.

## II. Analysis

### A. Standard of Review

■ We presume that trial court suppression rulings are grounded in the Federal Constitution unless specific, clear statements indicate a foundation in the Colorado Constitution. *People v. McKinstrey*, 852 P.2d 467, 469 (Colo.1993). No such statement exists here; hence, the Federal Fourth Amendment applies and federal precedent informs our review. U.S. Const. amend. IV; *see also* Colo. Const. art. II, § 7.

■ In reviewing the trial court order, we delineate between a clear error review of the facts and circumstances surrounding the charge and a de novo review of questions of law, including the scope of consent provided. *See Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991) (defining the objective reasonableness standard); *United States v. Rich*, 992 F.2d 502, 504 (5th Cir.1993) (summarizing the difference between clear error and de novo review); *People v. Olivas*, 859 P.2d 211, 214 (Colo.1993) (mixing objective reasonableness review for scope of consent with a clear error review

according to the totality of the circumstances for facts). We have observed that "the trial court's factual determinations will be upheld on appeal unless they are clearly erroneous." *People v. Dumas*, 955 P.2d 60, 62–63 (Colo. 1998). These factual determinations include the context surrounding the consent, whether consent was in fact provided, and whether consent was in any way limited. *See id.* at 63–64. Conversely, we review questions of law and the legal parameters of the consent according to objective reasonableness, which we have interpreted to mean "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *People v. Najjar*, 984 P.2d 592, 596 (Colo.1999) (quoting *Jimeno*, 500 U.S. at 251, 111 S.Ct. 1801).

### B. Findings of Fact

■ We review the historical facts and events surrounding the consent, including whether the defendant actually provided consent, for clear error according to a totality of the circumstances, deferring to the trial court unless the record proves its findings clearly erroneous. *Olivas*, 859 P.2d at 214 ("[T]he trial court's factual determinations will be upheld on appeal unless they are clearly erroneous."); *Rich*, 992 F.2d at 504; *Dumas*, 955 P.2d at 62–63. Here, the trial court found that Minor provided voluntary consent to search the car despite the fact that there was some evidence to the contrary.[2] We adopt the trial court's findings of fact because the record clearly supports them.[3] *Olivas*, 859 P.2d at 214.

■ We also uphold the trial court's finding that the defendant voiced no limitations

---

1. In ruling the search unconstitutional, the court relied upon a string of cases speaking to probable cause in the context of warrantless vehicle searches, which is a different analysis than the consensual search upon which we decide the case today. *See, e.g., People v. Daverin*, 967 P.2d 629, 632–33, 633 & n. 4 (Colo.1998) (holding that an officer had probable cause to search the bed of a pickup truck after finding drugs and paraphernalia in the cab during a search incident to arrest); *People v. Moore*, 900 P.2d 66, 70 (Colo.1995) (holding that probable cause supported police search of the defendant's vehicle and wallet for drugs).

2. Both Minor and a passenger testified at the motions hearing that consent was never given to search the vehicle, and Officer Waidler failed to include the detail of consent in his initial written report on the incident.

3. In its findings of fact, the trial judge stated: "For reasons that will become very obvious, I am simply going to err on the side of finding that there was consent to search the car." We review official findings of fact in the record according to a clearly erroneous standard, and Officer Waidler's testimony supports a finding of consent. *Olivas*, 859 P.2d at 214.

on his consent to search the vehicle. Although the practical scope of a consensual search is a question of law, whether or not any limitations were placed on the search at the time of consent is a question of fact weighed on a clearly erroneous standard. *Id.* We find no such clear error here.

## C. The Legality of the Search

■ The Supreme Court has held that the Fourth Amendment does not proscribe all searches—it merely prohibits those that are unreasonable. *Katz v. United States,* 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Illinois v. Rodriguez,* 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). "The touchstone of the Fourth Amendment is reasonableness." *Jimeno,* 500 U.S. at 251, 111 S.Ct. 1801 (citing *Katz,* 389 U.S. at 360, 88 S.Ct. 507). Using reasonableness as the gauge, a search is reasonable when officers have obtained valid consent to conduct the search because the defendant has chosen to waive his Fourth Amendment protections. *Jimeno,* 500 U.S. at 250–51, 111 S.Ct. 1801 (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)); *Najjar,* 984 P.2d at 596 ("[C]onsensual searches have long been approved because 'it is no doubt reasonable for the police to conduct a search once they have been permitted to do so.'" (quoting *Jimeno,* 500 U.S. at 250–51, 111 S.Ct. 1801)).

■ Hence, we first address the authority of the defendant, who was the driver but not the owner of the vehicle, to consent to the search. Proper consent can come from any individual with common authority over the area or item searched, with the burden of proving such authority resting with the state. *Rodriguez,* 497 U.S. at 181, 110 S.Ct. 2793. The Supreme Court's analysis considers whether the person giving consent "possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). Multiple circuits have applied this logic to vehicle cases in which the driver, who has "common authority" and a "sufficient relationship" with the vehicle, consents to a search. *United States v. Morales,* 861 F.2d 396, 399 (3d Cir.1988) ("[A] driver of a vehicle has the authority to consent to a search of that vehicle."); *United States v. Eldridge,* 984 F.2d 943, 948 (8th Cir.1993); *United States v. Dunkley,* 911 F.2d 522, 526 (11th Cir.1990). Here, we endorse this reasoning and hold that a driver with control over a vehicle possesses the authority to consent to a search of the vehicle even when the car owner is present as a passenger.

We next review the scope of Minor's consent, objectively asking what a reasonable officer would conclude are the parameters of Minor's general consent. *See Jimeno,* 500 U.S. at 251, 111 S.Ct. 1801. In *Jimeno,* the Supreme Court addressed a similar question when it ruled that the search of a closed container in a vehicle did not violate the Fourth Amendment after the defendant had consented to a general search of the vehicle. *Id.* at 249, 111 S.Ct. 1801. In that case, a police officer pulled over the defendant on a traffic stop. *Id.* Based on an overheard conversation, the officer had reason to believe that the defendant was involved in illegal drug trafficking, a fact the officer relayed to the defendant before asking permission to search the vehicle. *Id.* The defendant declared that he had nothing to hide and consented to a search without voicing any limitations. *Id.* The Court interpreted this as a general consent to search the entire vehicle, including containers, despite drugs being the implicit object of the search. *Id.* Specifically, the Court employed the objective reasonableness standard to reach its decision, concluding that:

> We think that it was objectively reasonable for the police to conclude that the general consent to search respondent's car included consent to search containers within that car which might bear drugs. A reasonable person may be expected to know that narcotics are generally carried in some form of a container.

*Id.* at 251, 111 S.Ct. 1801.

Upon executing the search in *Jimeno,* the officer found a folded, closed, brown paper bag on the floor, which contained a kilogram of cocaine. *Id.* Although the Court noted that further consent would probably have

been necessary to open a locked container or briefcase, the Court explicitly refused to require a separate and distinct consent for every container found within the area of the search if the container could reasonably hold the object of the search. *Id.* at 252, 111 S.Ct. 1801. Indeed, we agree with the *Jimeno* Court's distinction between containers requiring force to open, such as locked briefcases, and items that are merely closed, like folded paper bags, because it would be unreasonable to interpret one's general consent as authorizing the forcible destruction of property. *Id.* Thus, *Jimeno* held that it is reasonable to include in the search anything that represents a likely container for the implied object of the search so long as no forcible destruction of property is necessary to access its contents. *See id.* at 251–52, 111 S.Ct. 1801. Moreover, in rejecting the notion that individual consent is required for every container in a vehicle, the Court stated "we see no basis for adding this sort of superstructure to the Fourth Amendment's basic test of objective reasonableness." *Id.* at 252, 111 S.Ct. 1801.

 Similarly, in *Olivas*, we upheld a search that produced marihuana hidden behind the loose panel of the driver's side door after the defendant consented to a general search of the vehicle. *Olivas*, 859 P.2d at 212–13. We noted that after an officer obtains general consent,

> it is reasonable for a police officer to believe that he may search areas of the automobile that extend beyond the passenger compartment and trunk if the facts and circumstances surrounding the search and investigation provide the officer with a sufficient basis to believe that contraband was hidden in those areas and the suspect fails to affirmatively limit the search away from those areas.

*Id.* at 215–16; *see also United States v. Deases*, 918 F.2d 118, 122 (10th Cir.1990) ("Consent to search a car means to search the entire car and whatever is in it, unless such consent is otherwise restricted."). Hence, the scope of a general search extends to any area that an objective officer could reasonably assume might hold the object of

the search, including the trunk of a vehicle and unlocked containers therein.

Here, the defendant provided general, unlimited consent to search the entire vehicle, knowing that illegal drugs were the implicit object of the search. A zippered but unlocked backpack in the trunk of a car is objectively a place where illegal substances could be stored. As *Jimeno* concluded, we find it unnecessary to add any superstructure to our Fourth Amendment analysis that would require specific consent to search individual containers when no forcible destruction of property is necessary to access their contents. Thus, the search of the backpack was objectively reasonable given the defendant's general, unlimited consent to search.

### III. Conclusion

Because we find no clear error in the trial court's findings, we adopt its finding of fact that Minor consented to an unlimited search of the vehicle. We reverse the trial court's conclusions of law, however, and hold that the search of the trunk and closed backpack therein were reasonable under the Fourth Amendment. Thus, the marihuana found in the trunk and statements in response to its discovery are admissible at trial.