PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

CURTIS ROBERT WILLIAMS,

*Defendant-Appellant.*

No. 08-5000

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(1:08-cr-00059-LMB-1)

Argued: September 22, 2009

Decided: January 21, 2010

Before NIEMEYER and DUNCAN, Circuit Judges, and
James P. JONES, Chief United States District Judge for the
Western District of Virginia, sitting by designation.

---

Affirmed by published opinion. Judge Niemeyer wrote the
opinion, in which Judge Duncan and Judge Jones joined.

---

## COUNSEL

**ARGUED**: Todd M. Richman, OFFICE OF THE FEDERAL
PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.
Andrew McCormack, OFFICE OF THE UNITED STATES

ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF**: Michael S. Nachmanoff, Federal Public Defender, Alexandria, Virginia; Ian Conner, HUNTON & WILLIAMS, LLP, Washington, D.C., for Appellant. Dana J. Boente, Acting United States Attorney, Alexandria, Virginia, for Appellee.

---

### OPINION

NIEMEYER, Circuit Judge:

Based on evidence seized from his home during execution of a search warrant, Curtis Williams was convicted of possession of an unregistered machine gun and an unregistered silencer, in violation of 26 U.S.C. §§ 5861(d) and 5871, and possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(8)(A). The district court sentenced him to 41 months' imprisonment.

Before trial, Williams filed a motion to suppress the machine gun, the silencer, and a DVD containing the pornography, arguing that the search for and seizure of them exceeded the scope of the search warrant and that their seizure was not justified by the "plain-view" exception to the warrant requirement. The district court denied the motion, and Williams now appeals this ruling.

For the reasons that follow, we conclude that the search for and seizure of the child pornography fell within the scope of the warrant or, alternatively, that its seizure was justified under the plain-view exception to the warrant requirement. We conclude that the seizure of the machine gun and silencer was justified by the plain-view exception. Accordingly, we affirm.

I

In September 2007, the Fairfax Baptist Temple in Fairfax Station, Virginia, began receiving threatening e-mail mes-

sages from an individual identifying himself as "Franklin Pugh." Similar and related e-mails were later received from several other e-mail accounts, registered in the names of children attending the Fairfax Baptist Temple School, who had been referred to in the earlier e-mails.

In an e-mail dated October 16, 2007, Pugh named several young boys who attended the Fairfax Baptist Temple School, describing their physical characteristics. He stated that he was a pedophile, that he could not face life without having sex with the boys, and that he could not attend the Fairfax Baptist Temple again unless he could give oral sex to a boy at the church whom he identified by name. At the end of the e-mail, he stated, "I know your boy's names. I know where they go for lunch after church. I know where they live. I know when they come and leave school. There's boys I'd love to sleep with right now. There is an endless supply. Boy dick is everywhere."

In an e-mail dated October 22, 2007, the sender, now identifying himself as one of the boys named in an earlier e-mail, wrote in the same vein as earlier e-mails. After sending several more e-mails, the sender announced that he would be getting a new account to send further messages. Nonetheless, several more e-mails were sent under this name, continuing to discuss molesting the boys at the Fairfax Baptist Temple School, sacrificing them to God like Abraham and Isaac, and having sex with one of the boys post-sacrifice, unless "God makes me burn him."

Beginning on October 24, 2007, similar e-mails were received from an account registered under the name of the father of the pastor of Fairfax Baptist Temple. Again the messages discussed molesting the boys there. One of these e-mails included the following passage:

> I think I might be close to getting saved. Jesus allowed me to see [Boy 1's] erection last night. I

prayed all day and all night and Jesus showed it to me. Just like Isaac's and Ishmael's penis[es] in the bible book. [Boy 1] is the most beautiful boy I have ever seen. Why did God make boys so beautiful if we aren't allowed to enjoy them? I know it will be a sin to have sex with [Boy 1] or [Boy 2] or especially the younger boys, but I can't see any way not to do it. Now that Jesus showed me his erection I know it is alright to love [Boy 1].

Upon investigation, the Fairfax County Police determined that at least one of the e-mail accounts from which e-mails had been received had been accessed repeatedly by an Internet account registered to Karol Williams, in Clifton, Virginia, who is the wife of the defendant, Curtis Williams. Both Karol and Curtis were active members of the Fairfax Baptist Temple. Upon learning this, the police applied for a warrant to search Karol and Curtis Williams' home.

In the affidavit supporting the warrant application, Fairfax County Detective Craig Paul summarized the e-mails, detailed the police investigation to date, and stated that the evidence supported his belief that violations of state law had occurred, particularly § 18.2-60 of the Virginia Code, prohibiting any person from communicating threats to kill or do bodily harm to persons at elementary, middle, or secondary schools, and § 18.2-152.7:1, prohibiting harassment by computer by communicating "obscene, vulgar, profane, lewd, lascivious, or indecent language, or mak[ing] any suggestion or proposal of an obscene nature." To support his concern for the safety of the boys at the school, Detective Paul highlighted the e-mail statements, "I know your boy's names. I know where they go for lunch after church. I know where they live. I know when they come and leave school."

In addition to providing the factual basis for the violations, Detective Paul explained, "It has been your Affiant's training and experience that adults who are engaged in the sexual

exploitation of children keep images and related documents with them. They also collect images and texts describing sexual interaction with minors and child erotica."[1] The detective described the child pornography market, the use of computers and other recording devices, and the need to seize and search various types of electronic media to locate evidence of the threat crimes, including evidence properly characterized as child pornography.

Based on Detective Paul's affidavit, a Fairfax County magistrate issued a search warrant on October 25, 2007, that "commanded" officers to search for and seize from the home of Karol and Curtis Williams:

> Any and all computer systems and digital storage media, videotapes, videotape recorders, documents, photographs, and Instrumentalities indicat[ive] of the offense of § 18.2-152.7:1 Harassment by Computer and § 18.2-60 Threats of death or bodily injury to a person or member of his family; threats to commit serious bodily harm to persons on school property, Code of Virginia (as amended).

Police, along with the FBI, executed the warrant the next day and seized several computers, CDs, DVDs, and other electronic media devices.

The police also seized a machine gun and a silencer, both without serial numbers, which they discovered during their search in a small lockbox in Williams' garage. Detective Peter Charles found the lockbox while searching the garage, and, believing that it might contain evidence authorized by the warrant, he opened it. Inside, Detective Charles observed a machine gun and silencer, although it was not immediately clear that these firearms were illegally owned. Detective

---

[1]"Child erotica" is understood to refer to non-pornographic images of children, apparently used for sexual gratification.

Charles picked up the gun to determine whether it was loaded and, during the course of this inspection, noticed that neither the gun nor the silencer had a serial number on it. As Detective Charles later explained, "Based on the examination, which is primarily for my own safety, to make sure [the gun] wasn't loaded, I noticed that neither the silencer nor the weapon itself had any serial numbers. In my experience and training, there is no reason for any weapon to have—not have any serial numbers and still be legally owned." Having identified the guns and silencer as contraband, Detective Charles seized them and continued his search.

The FBI agents who had participated in the search of the Williams' house took the computers and electronic media and later searched their contents. During the course of that search, FBI Agent Michael French reported in an e-mail sent to the U.S. Attorney's Office in the Eastern District of Virginia that "we found many deleted images of young male erotica from September-October 2007. We also found [that] the anonymizer software TOR had been installed." He concluded by saying that he hoped to find Williams' "collection" on the laptop and USB thumbdrives the following week.

Sometime later during his search, Agent French opened a DVD that had been seized from the Williams' home, labeled with the words, "Virus Shield, Quaranteed Files, Destroy." Upon opening the DVD, he observed over a thousand images in "thumbnail view" of minor boys, some of which were sexually suggestive and some of which were sexually explicit. Of the total number of images, approximately 39 constituted child pornography.[2]

---

[2]After observing these images, Agent French obtained a second search warrant from federal authorities specifically to authorize a search for child pornography on Williams' computers and electronic media. Williams' challenge to the search and seizure, however, is directed to the authority of the officers to search the computers and electronic media under the state warrant.

Williams was indicted on two counts of possession of an unregistered firearm (the machine gun and the silencer), in violation of 26 U.S.C. §§ 5861(d) and 5871, and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(8)(A). After he was indicted, Williams filed a motion to suppress the child pornography, the machine gun, and the silencer, contending that their seizure exceeded the scope of the warrant and was not justified by the plain-view exception to the warrant requirement.

The district court denied Williams' motion. The court explained, with respect to the child pornography, "The fact that a person who's already under suspicion for threatening to do bodily harm to minors would have imagery within his computer or within his home showing significant mistreatment of minors in my view is sufficiently within the ambit of those concerns to permit the agents to search for that [under the warrant]." The court concluded that the child pornography was "evidence and instrumentalities of criminal activity" and therefore that its seizure was authorized by the warrant. With respect to the machine gun and the silencer, the court concluded that their seizure was justified under the plain-view exception to the warrant requirement:

> The officer was legitimately in the location where he saw the item, because the lockbox was large enough to hold the specific items that were involved in the warrant. . . .
>
> The detective in my view was -– legitimately had the right to handle the weapon to make sure it was not armed. In doing so he notices no serial number on either the silencer or the machine gun.
>
> That in my view was more than sufficient probable cause for the officer to believe that he had contraband per se in his possession. He was therefore obli-

> gated in my view to seize it at that point. That's not
> a violation of the Fourth Amendment.

Williams agreed to be tried by the court on stipulated facts, and the court found him guilty of all three charges. Williams now appeals the district court's ruling on his motion to suppress the DVD containing images of child pornography, the machine gun, and the silencer.

## II

Williams contends first that the government's seizure of a DVD containing 39 images of child pornography, which formed the basis for his conviction under 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(8)(A), violated his Fourth Amendment right against unreasonable searches and seizures. He asserts that the search warrant did not authorize a search of his computer and related digital media for child pornography. Rather, it only authorized a search for and seizure of evidence relating to two designated Virginia crimes involving threats of bodily harm and harassment by computer.

Indeed, his argument is more nuanced. Reasoning that "[s]ince computers can hold so much information, touching on virtually every aspect of a person's life, the potential for invasion of privacy in a search of electronic evidence is significantly greater than in the context of a non-computer search," Williams argues that traditional Fourth Amendment rules cannot be successfully applied in this context. He specifically relies on an article by Professor Orin Kerr, in which Professor Kerr maintained that a new approach is needed for applying the Fourth Amendment to searches of computers and digital media. *See* Orin S. Kerr, *Searches and Seizures in a Digital World*, 119 Harv. L. Rev. 531 (2005). Professor Kerr explained:

> The new dynamics of computer searches and seizures teach important lessons about the Fourth

Amendment. For most of its first two centuries, the Fourth Amendment was used almost exclusively to regulate government searches of homes and containers. The mechanisms of home and container searches directed Fourth Amendment doctrine to focus primarily on the entrance to the home or container. In a world of physical barriers, actions that broke down those physical barriers became the focus of judicial attention. The world of digital search and seizure shows that this focus is contingent on the architecture of physical searches. As computer searches and seizures become more common in the future, we will begin to see twentieth-century Fourth Amendment doctrine as a contingent set of rules that achieves the foundational goals of the Fourth Amendment law given the dynamics of searching physical property. Those physical rules will be matched by a set of rules for digital searches and seizures that attempts to achieve the same purpose in a very different factual context.

*Id.* at 584-85; *see also* Raphael Winick, *Searches and Seizures of Computers and Computer Data*, 8 Harv. J.L. & Tech. 75, 105 (1994) ("Since electronic storage is likely to contain a greater quantity and variety of information than any previous storage method, computers make tempting targets in searches for incriminating information."). *But see* David J.S. Ziff, Note, *Fourth Amendment Limitations on the Execution of Computer Searches Conducted Pursuant to a Warrant*, 105 Colum. L. Rev. 841, 861-72 (2005) (arguing that traditional Fourth Amendment rules can successfully be applied to digital searches).

Emphasizing the basic principle that a search warrant must not authorize general searches but must particularize the place and items to be searched, Williams argues that the warrant in this case must not be read to have authorized officers to view each file on the computer, but rather to have authorized a

search of *only those files* in his computer that related to the designated state offenses. Applying this limitation to the search in this case, Williams argues that the authorization for the search of his computers and digital media was limited to files relating to the two Virginia crimes of threatening bodily harm and harassment by computer, and that the files relating to child pornography fell outside the scope of the warrant and therefore were seized without a warrant.

In addition, Williams argues that the search for and seizure of child pornography in this case did not fall within any recognized exception to the Fourth Amendment's warrant requirement. To apply the plain-view exception in the context of computer searches would, Williams argues, "effectively read[ ] the warrant requirement out of the Fourth Amendment." Relying heavily on *United States v. Carey*, 172 F.3d 1268, 1273 (10th Cir. 1999), which held that child pornography discovered on a computer during the course of a search for evidence of drug transactions must be suppressed because it was not "inadvertently discovered," Williams argues that the plain-view exception cannot be applied in the context of computer searches unless the files sought to be seized pursuant to the exception are discovered "inadvertently." In this case, Williams observes that the officers suspected him of possessing child pornography from the outset of their investigation and that they used the warrant's authorization to search for such materials, which, he maintains, fell outside the scope of the warrant. Such a scenario, he concludes, can hardly be thought of as "inadvertent," and thus the plain-view exception cannot justify the seizure of the images.

The government contends that the child pornography images fell within the scope of the search warrant as "instrumentalities" of the designated Virginia crime involving threats to persons on school property. The government notes that Williams had been involved in "extensive e-mail communications with church officials regarding the sexual exploitation of children. These e-mails involved both overt and thinly dis-

guised threats to molest and kill real children attending the church. Further, at least one of these e-mails made express reference to the fact that defendant had knowledge of when the children 'come and leave school.'" The government argues that in response to this threat, police officers obtained a search warrant authorizing the seizure of computer-based evidence of the designated crimes and instrumentalities for the commission of those crimes, which, because of the nature of the offenses, included an authorization to search for and seize child pornography.

The government also notes that, while it does not need to rely on the affidavit supporting the search warrant, the affidavit explained that individuals involved in the criminal conduct identified often collect images of the sexual exploitation of children and tend to collect these images through the Internet. Thus, it reasons, the district court was correct in finding that child pornography constituted an "instrumentality" of the designated crimes. It concludes, "Simply stated, the child pornography constituted, among other things, computer-based evidence and/or an instrumentality indicative of the offense of Section 18.2-60 threats to commit serious bodily harm to persons on school property." (Internal quotation marks and alterations omitted).

Alternatively, the government contends that if the child pornography was seized without the warrant's authorization, its seizure was nonetheless justified under the plain-view exception to the warrant requirement. It observes that the warrant authorized officers to search Williams' computer and computer storage devices and that, during the search of those items, the officers came upon the DVD containing thumbnail images of child pornography, whose nature as contraband was clear.

The parties' contentions thus present two questions: (1) whether the government's search for and seizure of child pornography fell within the scope of the warrant's authorization;

and (2) whether the evidence of child pornography was in any event properly seized under the plain-view exception to the warrant requirement. We address these in order.

A

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." At its core, the Fourth Amendment protects against general warrants that authorize "exploratory rummaging in a person's belongings . . . by requiring a particular description of the things to be seized." *Andresen v. Maryland*, 427 U.S. 463, 480 (1976) (internal quotation marks omitted). The particularity requirement is fulfilled when the warrant identifies the items to be seized by their relation to designated crimes and when the description of the items leaves nothing to the discretion of the officer executing the warrant. *See Andresen*, 427 U.S. at 480-82; *Stanford v. Texas*, 379 U.S. 476, 485 (1965).

When a search is conducted pursuant to a warrant, it "is limited in scope by the terms of the warrant's authorization." *United States v. Phillips*, No. 07-4230, ___ F.3d ___, 2009 WL 4061558, at *4 (4th Cir. Nov. 24, 2009); *see also Walter v. United States*, 447 U.S. 649, 656 (1980) (plurality opinion); *United States v. Squillacote*, 221 F.3d 542, 555 (4th Cir. 2000). But the terms of the warrant are not to be interpreted in a "hypertechnical" manner. *United States v. Robinson*, 275 F.3d 371, 380 (4th Cir. 2001). Rather, they should be read with a "commonsense and realistic" approach, to avoid turning a search warrant into a "constitutional straight jacket." *Phillips*, ___ F.3d at ___, 2009 WL 4061558, at *4 (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965), and *United States v. Dornhofer*, 859 F.2d 1195, 1198 (4th Cir. 1988)).

When a search requires review of a large collection of items, such as papers, "it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized." *Andresen*, 427 U.S. at 482 n.11; *see also United States v. Crouch*, 648 F.2d 932, 933-34 (4th Cir. 1981) (holding that officers may conduct "some cursory reading" of documents discovered during the course of a search to determine their relevance to the crime providing the basis for the search). If, in those circumstances, documents not covered by the warrant are improperly seized, the government should promptly return the documents or the trial judge should suppress them. *See Andresen*, 427 U.S. at 482 n.11. While the constitutional protection cannot demand perfection, any tolerance of imperfection does not give officers "free rein to ransack and take what they like[ ]." *Phillips*, ___ F.3d at ___, 2009 WL 4061558, at *9.

In this case, the warrant authorized a search for and seizure of "[a]ny and all computer systems and digital storage media, . . . documents, photographs, and Instrumentalities" indicative of the Virginia state law offenses stated in Va. Code Ann. §§ 18.2-152.7:1 (harassment by computer) and 18.2-60 (threats of death or bodily injury to a person or member of his family; threats to commit serious bodily harm to persons on school property). A violation of the referenced harassment by computer offense includes using a computer or computer network "to communicate obscene, vulgar, profane, lewd, lascivious, or indecent language, or to make any suggestion or proposal of an obscene nature, or threaten any illegal or immoral act." Va. Code Ann. § 18.2-152.7:1. The district court held that within the scope of that offense was the narrower conduct of making violent and sexual threats against children from the Williams' residence. The court concluded that it was relevant to any prosecution of the designated offense that the defendant possessed images in which children were sexually exploited. It thus found that the images of child

pornography on the DVD were "instrumentalities" of the computer harassment charge.

We agree with the court's reasoning. While the warrant did not explicitly authorize a search for child pornography, it did authorize a search for instrumentalities of computer harassment and "photographs . . . indicati[ve] of" this offense, which involves communicating "obscene, vulgar, profane, lewd, lascivious, or indecent language," or making a "suggestion or proposal of an obscene nature," or threatening an "illegal or immoral act." Va. Code Ann. § 18.2-152.7:1. Particularly in the context of the threats made in this case, which indicated that the person sending the e-mails to the church was a pedophile, pornographic images involving children were relevant to demonstrating the authorship and purpose of the e-mails. The e-mails stated that the sender could not face life without having sex with the boys and that he could not attend the church again unless he could give oral sex to a specific boy at the church, whom he identified by the child's actual name. In addition, the sender of the e-mail stated, "I know your boy's names. I know where they go for lunch after church. I know where they live. I know when they come and leave school. There's boys I'd love to sleep with right now. There is an endless supply. Boy dick is everywhere."

The fact that the DVD containing child pornography might also have indicated crimes other than those described in the warrant does not preclude its seizure. "Courts have never held that a search is overbroad merely because it results in additional criminal charges." *Phillips*, ___ F.3d at ___, 2009 WL 4061558, at *5. Thus, the fact that possession of child pornography is itself a crime does not render the seizure outside the scope of an investigation into the computer harassment crime. Whether seized evidence falls within the scope of a warrant's authorization must be assessed solely in light of the relation between the evidence and the terms of the warrant's authorization. *See id.*; *United States v. Srivastava*, 540 F.3d 277, 290 (4th Cir. 2008).

In this case, we believe that the district court did not err in concluding that the images of child pornography contained on the DVD were sufficiently relevant to the crimes designated in the warrant to justify their seizure under the warrant.

B

Even if we were to conclude that the warrant did not authorize a search for child pornography, we conclude alternatively that the seizure of the images portraying child pornography was, in any event, justified by the plain-view exception to the warrant requirement.

As a general rule, warrantless searches or seizures are per se unreasonable. But there are "a few specifically established and well-delineated exceptions." *Mincey v. Arizona*, 437 U.S. 385, 390 (1978) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)); *see also United States v. Ross*, 456 U.S. 798, 824-25 (1982). One such exception is that "under certain circumstances the police may seize evidence in plain view without a warrant." *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971) (plurality opinion). Under this exception, police may seize evidence in plain view during a lawful search if (1) the seizing officer is "lawfully present at the place from which the evidence can be plainly viewed"; (2) the seizing officer has "'a lawful right of access to the object itself'"; and (3) "the object's 'incriminating character [is] . . . immediately apparent,'" *United States v. Legg*, 18 F.3d 240, 242 (4th Cir. 1994) (quoting *Horton v. California*, 496 U.S. 128, 136-37 (1990)); *see also United States v. Uzenski*, 434 F.3d 690, 707 (4th Cir. 2006). "The plain-view doctrine is grounded on the proposition that once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost; the owner may retain the incidents of title and possession *but not privacy*." *Illinois v. Andreas*, 463 U.S. 765, 771 (1983) (emphasis added).

The justification for the plain-view exception becomes evident when considering the difference between searches and

seizures. "A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property." *Horton*, 496 U.S. at 133. "If an article is already in plain view, neither its observation nor its seizure would involve any invasion of *privacy*. A seizure of the article, however, would obviously invade the owner's *possessory* interest." *Id.* at 133-34 (emphasis added) (internal citations omitted). Thus, the *mere observation* of an item in plain view during the course of a lawful search does not implicate any Fourth Amendment concerns and therefore does not need to be justified by any exception to the warrant requirement. And its *seizure* is justified by the fact that any ownership or possessory interest in the item is defeated by its illegality.

In this case, the warrant authorized a search of Williams' computers and digital media for evidence relating to the designated Virginia crimes of making threats and computer harassment. To conduct that search, the warrant impliedly authorized officers to open each file on the computer and view its contents, at least cursorily, to determine whether the file fell within the scope of the warrant's authorization—*i.e.*, whether it related to the designated Virginia crimes of making threats or computer harassment. *See Andresen*, 427 U.S. at 482 n.11; *Crouch*, 648 F.2d at 933-34. To be effective, such a search could not be limited to reviewing only the files' designation or labeling, because the designation or labeling of files on a computer can easily be manipulated to hide their substance. Surely, the owner of a computer, who is engaged in criminal conduct on that computer, will not label his files to indicate their criminality. *See United States v. Hill*, 459 F.3d 966, 978 (9th Cir. 2006) ("'Criminals will do all they can to conceal contraband, including the simple expedient of changing the names and extensions of files to disguise their content from the casual observer'" (quoting with approval the district court's opinion)); *United States v. Gray*, 78 F. Supp. 2d 524, 527 n.5 (E.D. Va. 1999) ("[C]omputer files can be misleadingly labeled, particularly if the owner of those files

is trying to conceal illegal materials"); *see also United States v. Riley*, 906 F.2d 841, 845 (2d Cir. 1990) ("[F]ew people keep documents of their criminal transactions in a folder marked 'drug records'").

Once it is accepted that a computer search must, by implication, authorize at least a cursory review of each file on the computer, then the criteria for applying the plain-view exception are readily satisfied. *See* Ziff, *supra*, at 861-66. *First*, an officer who has legal possession of the computer and electronic media and a legal right to conduct a search of it is "lawfully present at the place from which evidence can be viewed," thus satisfying the first element of the plain-view exception. *See Legg*, 18 F.3d at 242 (quoting *Horton*, 496 U.S. at 136). *Second*, the officer, who is authorized to search the computer and electronic media for evidence of a crime and who is therefore legally authorized to open and view all its files, at least cursorily, to determine whether any one falls within the terms of the warrant, has "a lawful right of access" to all files, albeit only momentarily. *Horton*, 496 at 136; *see also Andresen*, 427 U.S. at 482 n.11; *Crouch*, 648 F.2d at 933-34. And *third*, when the officer then comes upon child pornography, it becomes "immediately apparent" that its possession by the computer's owner is illegal and incriminating. *See Horton*, 496 U.S. at 136. And so, in this case, any child pornography viewed on the computer or electronic media may be seized under the plain-view exception.

Williams, relying on the Tenth Circuit's opinion in *United States v. Carey*, advances an argument that the plain-view exception cannot apply to searches of computers and electronic media when the evidence indicates that it is the officer's *purpose* from the outset to use the authority of the warrant to search for unauthorized evidence because the unauthorized evidence would not then be uncovered "inadvertently." *See Carey*, 172 F.3d at 1273.

This argument, however, cannot stand against the principle, well-established in Supreme Court jurisprudence, that the

scope of a search conducted pursuant to a warrant is defined *objectively* by the terms of the warrant and the evidence sought, not by the *subjective* motivations of an officer. *See Maryland v. Garrison*, 480 U.S. 79, 84 (1987) ("Thus, the scope of a lawful search is 'defined by the object of the search and the places in which there is probable cause to believe it may be found'" (quoting *Ross*, 456 U.S. at 824)); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"). As the Court stated in *Horton*, "[t]he fact that an officer is interested in an [unauthorized] item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant or a valid exception to the warrant requirement." 496 U.S. at 138. In that case, the Court *explicitly* rejected the very argument that Williams makes in this case, that unauthorized evidence must be suppressed because its discovery was not "inadvertent." As the *Horton* Court explained, "[E]ven though inadvertence is a characteristic of most legitimate 'plain view' seizures, it is not a necessary condition." *Id.* at 130.

While Williams relies accurately on *Carey*, which effectively imposes an "inadvertence" requirement, such a conclusion is inconsistent with *Horton*. Inadvertence focuses incorrectly on the subjective motivations of the officer in conducting the search and not on the objective determination of whether the search is authorized by the warrant or a valid exception to the warrant requirement.[3]

---

[3]We note that several of our cases decided prior to *Horton* required that evidence discovered during the course of a search be discovered "inadvertently" in order to be seized pursuant to the plain-view exception. *See, e.g.*, *United States v. Talbot*, 902 F.2d 1129, 1132 (4th Cir. 1990) ("Under the plain-view doctrine, the warrantless seizure of property is permissible if the following criteria are satisfied: (1) the police officer must first be engaged in a lawful intrusion or must otherwise legitimately occupy the position affording a plain view of the evidence seized; (2) the discovery

In this case, because the scope of the search authorized by the warrant included the authority to open and cursorily view each file, the observation of child pornography within several of these files did not involve an intrusion on Williams' protected privacy interests beyond that already authorized by the warrant, regardless of the officer's subjective motivations. *See Horton*, 496 U.S. at 133-34 & n.5. And neither did the seizure of these photographs interfere with Williams' possessory interests, for once their nature as contraband became apparent, Williams' possessory interests were forfeited.

At bottom, we conclude that the sheer amount of information contained on a computer does not distinguish the authorized search of the computer from an analogous search of a file cabinet containing a large number of documents. As the Supreme Court recognized in *Andresen*, "[T]here are grave dangers inherent in executing a warrant authorizing a search and seizure of a person's papers that are not necessarily present in executing a warrant to search for physical objects whose relevance is more easily ascertainable." 427 U.S. at 482 n.11. While that danger certainly counsels care and

---

of the evidence must be inadvertent; and (3) it must be immediately apparent that the evidence may be either contraband or evidence of a crime"); *United States v. Fawole*, 785 F.2d 1141, 1145 (4th Cir. 1986) ("The warrantless seizure of private possessions is permissible under the 'plain view' doctrine if the seizure meets three conditions. . . . Second, the police officer must discover the incriminating evidence 'inadvertently'"). These cases relied on a statement to this effect in the Supreme Court's plurality opinion in *Coolidge*, 403 U.S. at 469-70, which the Supreme Court specifically repudiated in *Horton*. *See Horton*, 496 U.S. at 130 ("In this case we revisit an issue that was considered, but not conclusively resolved, in *Coolidge v. New Hampshire*, 403 U.S. 443 (1971): Whether the warrantless seizure of evidence of crime in plain view is prohibited by the Fourth Amendment if the discovery of the evidence was not inadvertent. We conclude that even though inadvertence is a characteristic of most legitimate 'plain-view' seizures, it is not a necessary condition"). To the extent that these cases suggested that inadvertence is a requirement of a warrantless plain-view seizure, they are now overruled by *Horton*.

respect for privacy when executing a warrant, it does not prevent officers from lawfully searching the documents, nor should it undermine their authority to search a computer's files. *See United States v. Giberson*, 527 F.3d 882, 888 (9th Cir. 2008) (holding that "neither the quantity of information, nor the form in which it is stored, is legally relevant in the Fourth Amendment context"). We have applied these rules successfully in the context of warrants authorizing the search and seizure of non-electronic files, *see Crouch*, 648 F.2d at 933-34, and we see no reason to depart from them in the context of electronic files.

Thus, the warrant in this case, grounded on probable cause to believe that evidence relating to the Virginia crimes of threatening bodily harm and computer harassment would be found on Williams' computers and digital media, authorized the officers to search these computers and digital media for files satisfying that description, regardless of the officers' motivations in conducting the search. If, in the course of conducting such a search, the officers came upon child pornography, even if finding child pornography was their hope from the outset, they were permitted to seize it as direct evidence of criminal conduct and, indeed, bring additional charges based on that evidence. *See Phillips*, ___ F.3d at ___, 2009 WL 4061558, at *5.

## III

Williams also contends that the district court erred in denying his motion to suppress the machine gun and silencer found by police during the search of his home. He argues that because the gun and silencer were lying in a lockbox, they did not pose a risk to the searching officers, and therefore the officers did not have any justification to pick them up to discover that they lacked serial numbers.

To support his argument, Williams relies most heavily on the Supreme Court's decision in *Arizona v. Hicks*, 480 U.S.

321 (1987), where the Court held that an officer violated the defendant's Fourth Amendment rights when the officer, even though legally in the defendant's apartment in response to a shooting that had just taken place, picked up some stereo components without a warrant to see their serial numbers and determine whether they had been stolen. *Id.* at 323-26. Williams maintains that because the officers searching his home did not have probable cause to believe that the machine gun and silencer were illegal before one of the officers handled the items to make a safety inspection, the inspection of the machine gun and silencer was, like in *Hicks*, an unreasonable warrantless search.

The government responds by arguing that this case is distinguishable from *Hicks* because of "the fundamentally different character of an officer moving an innocuous piece of stereo equipment that is completely unrelated to the reason the officer is lawfully present in an apartment and an officer temporarily handling a firearm in order to ensure officer safety in a home where the potential for violence existed." The government relies on our opinion in *United States v. Legg*, 18 F.3d 240 (4th Cir. 1994), in which we held that officer safety gave police executing a warrant in a defendant's home the right to handle a gun that had accidentally fallen on the floor when members of the defendant's family refused to cooperate and insisted on walking around the house. Based on this, the government argues that concerns for officer safety gave Detective Charles the right to inspect the gun to ensure that it was not loaded and that its incriminating nature became "immediately apparent" during the course of this lawful inspection.

While we agree with Williams that the mere fact that the item involved was a gun rather than a stereo does not serve to distinguish this case from *Hicks*, we believe Detective Charles' decision to inspect the gun was justified here because he had the authority under the warrant to conduct a thorough search of the lockbox. The warrant authorized the

police to search for things like disks and "thumbnail drives," which, the evidence showed, could be as small as a dime, and which could very easily have been stored in the lockbox with the gun and silencer. A thorough search of the lockbox would therefore have required Detective Charles to move the gun and silencer, even if only within the confines of the lockbox. And before moving the gun, Detective Charles was entitled to pick it up and determine whether it was loaded, for his own safety. It was during that legitimate operation of determining whether the gun was loaded that detective Charles discovered the missing serial number, manifesting the gun's illegality.

Thus, because it was during the course of a legitimate safety inspection that the incriminating character of the machine gun and silencer became "immediately apparent," Detective Charles' warrantless seizure of them was justified by the plain-view exception. *See Horton*, 496 U.S. 136-37.

For the reasons given, we affirm the judgment of the district court.

*AFFIRMED*